521 So.2d 608 (1988)
Octavio GARCIA, and Casa Garcia, Inc.
v.
STATE of Louisiana, DEPARTMENT OF LABOR; Dudley J. Patin, Jr., Secretary of Labor; and Cecil R. Formby, Labor Executive Officer.
No. CA 86 1632.
Court of Appeal of Louisiana, First Circuit.
February 23, 1988.
*609 Jeri Ann H. Flynn, Baton Rouge, for plaintiff-appellant Octavio Garcia, et al.
Floyd Falcon, Baton Rouge, for defendant-appellee State of La., Dept. of Labor.
Oliver W. Williams, Baton Rouge, for defendant-appellee State of La., et al.
Before LOTTINGER, EDWARDS and ALFORD, JJ.
LOTTINGER, Judge.
This appeal arises from a decision by an administrative law judge to prosecute Octavio *610 Garcia (Garcia), owner of Casa Garcia, Inc., for knowingly hiring eight illegal aliens. Plaintiff sought judicial review and injunctive relief, claiming the administrative law judge committed error of law and that the statute under which plaintiff was prosecuted is unconstitutional. From a trial court decision affirming the administrative findings, plaintiff appeals.

FACTS
On September 19, 1985, the United States Border Patrol and the Louisiana Department of Labor visited the premises of Casa Garcia Restaurant in Baton Rouge, whereupon they found nine persons unable to produce proper documentation of their legal work status.
An administrative hearing was conducted November 7, 1985 by Josie P. Self, deputy secretary of the Louisiana Department of Labor, who found the plaintiff violated La. R.S. 23:995[1] by knowingly employing eight of the nine illegal aliens found at the restaurant. She determined one of the nine was not actually employed at the restaurant. Accordingly, Garcia was assessed two thousand dollars.
The administrative law judge reasoned the statute "implicitly requires that an employer ask for and retain copies of documents showing that aliens employed in this business have a legal right to work in the United States."
During the hearing, Garcia admitted he was aware the aliens were not United States citizens and that he asked only for their social security numbers when they applied for work. Garcia also admitted he was arrested as an illegal alien "years ago."
Moreover, some of the aliens admitted to the United States Border Patrol authorities that plaintiff knew of their illegal status. These statements were admitted into the record. Gabriella Sanchez claimed plaintiff knew she was an illegal alien. Maria Lopez stated plaintiff did not ask for her social security number nor her immigration status. There was no social security number listed on her W-4 form, which was admitted into evidence. Jesus Enriquez stated the manager hired him notwithstanding he knew he did not have a social security card yet. Celia Carmona testified plaintiff did not ask for any documents, nor did she furnish a social security card. However, a social security number was listed on her W-4 form and job application. Jose Alberto Leon stated plaintiff was aware he had no documents to be in the country legally. Plaintiff allegedly did not ask for them nor for a social security card. Carlos Juarez, who admitted he was smuggled into the United States, stated plaintiff asked him if he had papers, but did not ask him to produce any. He has applied for a social security card, but is using one of an unknown person. Hector Ramirez (or Hector Olivera) stated he was not asked whether he was in the country legally when he was hired. He stated he does not have a social security card, nor was he asked for one.
Plaintiffs sought judicial review and injunctive relief of the enforcement of the administrative decision. Injunctive relief was granted February 18, 1986, pending a final decision, including any appeals.

TRIAL COURT
Following hearings to clarify the record and determine the constitutionality of the statute, the trial court rendered a decision affirming the administrative law judge's findings and upholding the constitutionality of the law. The court noted the Louisiana Administrative Procedure Act La.R.S. *611 49:951 et seq. and the jurisprudence interpreting it provide the reviewing court shall not set aside factual findings by the administrative hearing officer absent an abuse of discretion in the conclusion reached or where the findings are not supported by sufficient evidence. Accordingly, the trial court concluded the hearing officer had "abundant evidence to support her conclusion."

ASSIGNMENTS OF ERROR
Plaintiffs appealed, alleging the trial court erred:
(1) In affirming the agency's decision, because the decision was affected by error of law,
(2) In affirming the agency's decision, because the decision was arbitrary, capricious, and characterized by an abuse of discretion or a clearly unwarranted exercise of discretion,
(3) In affirming the agency's decision, because it was manifestly erroneous in view of the reliable, probative, and substantial evidence on record,
(4) In failing to enjoin enforcement of La.R.S. 23:991 through 995, because the provisions violate state and federal constitutional prohibitions against deprivation of liberty and property without due process of law,
(5) In failing to enjoin enforcement of La.R.S. 23:991 through 995, because the provisions violate state and federal constitutional prohibitions against denial of equal protection under the law, and
(6) In failing to enjoin enforcement of La.R.S. 23:991 through 995, because the provisions violate supremacy provisions of the federal constitution.

ASSIGNMENT OF ERROR NO. 1
Plaintiff alleges the administrative decision, affirmed by the trial court, contained two errors of law: the administrative law judge erroneously equated the knowledge required by the statute with imputed knowledge instead of actual knowledge and secondly, the law judge confused the status of "deportability" with "illicit employee."
We agree the statute does not implicitly require the employer "retain" copies of documents verifying the aliens' legal status. Such retention only frees the employer from prosecution as provided by La.R.S. 23:992.2.[2] On the other hand, we agree the statute does implicitly require the employer inquire as to the alien's legal status.
Plaintiff cites Black's Law Dictionary, 4th Ed. Rev., which in turn relies on an Iowa Court to support the proposition that "knowledge must be actual, not merely constructive."
Insofar as this court is not bound by the jurisprudence of other states, we turn to the lengthy discussion of "knowledge" by the Supreme Court in State v. Bagneris, 237 La. 21, 110 So.2d 123, 126 (1959):
The meaning of the word "knowledge" being synonymous with the words "made known" was exhaustively analyzed by this Court in State v. Perkins, supra [181 La. 997, 160 So. 789, 791], wherein we said:
"The meaning of the word `knowledge' is to be largely determined by the connection in which it is used. Its extent is not always the same when used in connection with different statutes relating to different subjects. In a legal sense, knowledge may be positive or imputed. While knowledge is to be distinguished from belief, information, *612 and suspicion, the means of knowledge may be equivalent to knowledge. Knowledge may mean that which is gained by information or intelligence as well as what is obtained from personal observation. The term may include that which is imputed and may be used as synonymous with notice of such circumstances as ordinarily, upon investigation, would lead in the exercise of reasonable diligence to a knowledge of the fact. One who intentionally remains ignorant may be chargeable in law with knowledge. And while notice is not actual knowledge, it may be such information as men usually act upon in ordinary human affairs. In this sense, knowledge is such actual notice as would put one upon inquiry. See Corpus Juris, vol. 35, p. 919." (Emphasis added).
We find it particularly relevant that plaintiff was arrested as an illegal alien at one time and also knew these individuals were not United States citizens. Plaintiff cannot claim ignorance by simply not asking questions that more than likely would have been asked by someone in similar circumstances.
Plaintiff also argues the hearing officer erroneously equated "legal work status" with "deportability." We find that argument is also without merit. While it is true the hearing officer noted the aliens were subsequently determined to be deportable, that statement was merely one of thirteen "findings of fact" she compiled. Moreover, the reference regarding their deportability status was not mentioned again in the hearing officer's "conclusions of law." Rather, she cited only their inability to produce the proper documents in concluding that plaintiff violated the law. Nowhere in her "conclusion of law" does she mention deportability as an element of the offense. Accordingly, we dismiss this assigned error and affirm the decision of the hearing officer as a matter of law.

ASSIGNMENTS OF ERROR NOS. 2 AND 3
La.R.S. 49:964,[3] sets the standard of judicial review of an agency's decision. In reviewing an agency's decision, the standard of review is much the same as our own jurisprudential rules pertaining to judicial review. Save Ourselves, Inc. v. Louisiana Environmental Control Commission, 452 So.2d 1152, 1158 (La.1984). "The manifest error test is used in reviewing the facts as found by the agency. The arbitrariness test is used in reviewing conclusions and exercises of agency discretion." Mayor and Council of Morgan City v. Ascension Parish Police Jury, 468 So.2d 1291, 1299-1300 (La.App. 1st Cir.1985).
In addition, the statute requires the agency's findings be accorded deference insofar as the hearing officer has the opportunity to judge the credibility of the witnesses by firsthand observation of the demeanor on the witness stand.
Accordingly, in the case sub judice, this court finds there is ample, reliable, probative, and substantial evidence to support the agency's findings, and thus, they were not manifestly erroneous. Furthermore, the conclusion reached by the agency was not arbitrary nor an abuse of discretion.

*613 ASSIGNMENTS OF ERROR NOS. 4 AND 5
Plaintiff contends the trial court erred in failing to enjoin the enforcement of La.R.S. 23:991 through 995. Garcia argues that those statutory provisions are violative of both federal and state constitutional prohibitions against deprivations of liberty and property without due process of law and denial of equal protection of the law. United States Const. amend. XIV, § 1 and La. Const. art. I, § 2, and § 3.
Plaintiff's cited errors, however, are without serious merit. Garcia, the employer, is without constitutional muster or standing to challenge those provisions in question. "As a general rule, the constitutionality of a [state] statute or [local] ordinance is only open to attack by a person whose rights are affected thereby, and a showing must be made that enforcement of the statute or ordinance will be an infringement of his rights." Baehr v. City of Lake Charles, 387 So.2d 1160, 1161 (La.1980). Accordingly, a litigant does not have standing if the statutory provision would only be unconstitutional if applied to third parties in hypothetical situations. County of Ulster v. Allen, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979); State v. Furlow, 460 So.2d 76 (La.App. 1st Cir.1984).
The plaintiff is an employer sanctioned by the appropriate state regulatory body. The allegations that certain rights were either denied or deprived need to be asserted by the illegally hired aliens, rather than their employer.[4] Garcia was afforded due process throughout both the administrative hearing and the trial court's finding. Garcia was sanctioned not as "an alien who is not entitled to lawful residence" but rather as an employer who wrongfully hired certain individuals. The rationality for the classifications of the aliens involved cannot be argued by one who is not so categorized. To permit such would only invite multi-challenges to third parties' hypothetial situations. Thus, Garcia, as an employer, lacks standing to challenge the constitutionality of the instant statutes.

ASSIGNMENT OF ERROR NO. 6
Plaintiff's final assigned error alleges that the trial court erred in failing to enjoin enforcement of La.R.S. 23:991 through 23:995. Garcia argues that the instant statutory provisions violate the supremacy provisions of the U.S. Const. art. I, § 8 and art. VI, § 2.
U.S. Const. art. I, § 8, provides, amongst other powers to Congress, that Congress establish "an uniform Rule of Naturalization." Article VI, cl. 2 provides that the Constitution and those laws made in the pursuance of the Constitution shall be "the supreme Law of the Land." Thus, the Supremacy Clause protects those "rights and expectancies established by federal law against the operation of state law and prevents the frustration and erosion of the congressional policy embodied in the federal rights," Thibodeaux v. Thibodeaux, 454 So.2d 813, 815 (La.1984), cert. denied, 469 U.S. 1114, 105 S.Ct. 800, 83 L.Ed.2d 792 (1984).
Garcia argues that the Immigration and Nationality Act (INA), 8 U.S.C. 1101, et seq., is a comprehensive scheme of federal legislation that preempts state law, especially when such laws "stand as an obstacle to Congressional objectives." Plaintiff contends that there exists a direct conflict between La.R.S. 23:991 through 995 and federal law. This court disagrees.
The fact that aliens are the subject of a state statute does not render the statute a regulation of immigration. DeCanas v. Bica 424 U.S. 351, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976). DeCanas concerned a California statute that prohibited an employer from "knowingly employ[ing] an alien who is not entitled to lawful residence *614 in the United States." The United States Supreme Court rejected the preemption claim in DeCanas because "Congress intended that the States be allowed, `to the extent consistent with federal law, [to] regulate the employment of illegal aliens.'" (emphasis by the Court). Toll v. Moreno, 458 U.S. 1, 14, n. 18, 102 S.Ct. 2977, 2984, n. 18, 73 L.Ed.2d 563 (1982) citing DeCanas, 424 U.S. at 361, 96 S.Ct. at 939.[5] Moreover, the INA provisions which appellant argues preempts the state statute do not make it "unlawful for an employer to hire an alien who is present and working in the United States without appropriate authorization," Bevles Company, Inc. v. Teamsters Local 986, 791 F.2d 1391, 1393 (9th Cir.1986).
Thus, it is not conceivable that a statute that prohibits illegal aliens from being knowingly hired by an employer "stands as an obstacle to the accomplishment and execution of the full purposes and objectives" of the INA provisions, Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). With such latitude granted toward state regulation La.R.S. 23:991 through 995 hardly halts or interferes with federal power and authority concerning immigration and nationalization of immigrants to this nation. Louisiana's provisions merely contain those police powers of the states "to regulate the employment relationship to protect workers within the State." DeCanas, 424 U.S. 351, 356, 96 S.Ct. 933, 937, 47 L.Ed.2d 43 (1976). Thus, the trial court was correct in denying the motion for the injunction of the enforcement of La.R.S. 22:991 through 995.
Therefore, for the above and foregoing reasons, the judgment of the trial court is affirmed at plaintiff-appellant's costs.
AFFIRMED.
NOTES
[1] La. 23:995, which has since been amended, read at the time of the offense:

A. No person, either for himself or on behalf of another, shall knowingly employ, hire, or refer, for private or public employment within the state, an alien who is not entitled to lawfully reside or work in the United States.
B. The secretary of the Department of Labor shall enforce the provisions of this Section. The secretary may assess civil penalties against any person violating the provisions of this Section, as follows:
(1) For a first violation the penalty shall be not more than two hundred fifty dollars for each alien employed, hired, recruited, or referred in violation of this Section.
[2] La.R.S. 23:992.2, which has since been amended, read at the time of the offense:

No person shall be prosecuted under the provisions of this Part upon a showing that each and every alien in his employ has provided the following documents of which the employer has retained a copy for his records:
(1) Social security card; or
(2) United States birth certificate, and/or at least one of the following:
(a) Selective service registration card
(b) Driver's license
(c) Naturalization certificate
(d) Certificate of citizenship
(e) Alien registration receipt card
(f) United States immigration form I-94 (with employment authorized stamp)
[3] La.R.S. 49:964(G) provides in part:

G. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record. In the application of the rule, where the agency has the opportunity to judge of the credibility of witnesses by firsthand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.
[4] This court also notes that plaintiff's position has severe problems as to ripeness or justiciability. Garcia complains that due to his darkskin, "foreign" accent, and Mexican ancestry that he could be discriminated against as a result of La.R.S. 23:991. The mere possibility of discrimination is not enough to establish a ripe issue. See, Parochial Employers Retirement System of Louisiana v. State, Through the Attorney General, 380 So.2d 189 (La.App. 3rd Cir.1980); Atchafalaya Basin Levee District v. Pecquet, 364 So.2d 610 (La.App. 1st Cir.1978).
[5] Appellant's brief contains a memorandum of amicus curiae by the United States Department of Labor and Immigration and Nationalization Service that appellant contends explains the preemption claim to a similiar Texas statute. However, the same memorandum cites DeCanas, id., as "upholding [a] California law prohibiting knowing employment of [an] alien illegally present in the United States as consistent with [the] policy of INA to discourage illegal immigration," 458 U.S. pg. 18, 102 S.Ct. pg. 2986.