Dear Mr. Williams:
You have requested an opinion of the Attorney General regarding the application of the ad valorem tax exemption provided for in Article VII, Section 21(B) (1) (a) to nonprofit corporations or associations, as that exemption applies to vacant land.
You state that you are having difficulty determining how to properly assess vacant properties owned by nonprofit corporations or associations. The properties are purchased, but often remain vacant for years while plans are developed to convert the property for utilization.
You specifically ask whether these organizations are entitled to tax exemptions each year for vacant lands when there is no visible effort or activity to convert the vacant land (e.g., building permits, drawings, plans, etc). Alternatively, you ask whether these vacant properties should be taxed each year until they are converted for utilization.
You also ask whether property owned by a nonprofit organization or association, but leased to another nonprofit or for-profit organization, should be subject to ad valorem taxation.
Initially, and as you point out in your request, the authority to determine whether a particular taxpayer may be exempt from the payment of ad valorem taxes is a factual determination exclusively reserved by the Louisiana Constitution and state law to the assessor, the Louisiana Tax Commission and, ultimately, the courts. Attorney General Opinion Nos. 00-140, 99-281, 97-100 and 94-603.
Further, the jurisprudence of this State has consistently held that constitutional and statutory grants of exemption from taxation must be strictly construed in favor of the taxing body, and against the taxpayer desiring the exemption. Zapata Haynie Corp. v. Larpenter, 583 So.2d 876
(La.App. 1st Cir. 1991), writ denied. With these principles in mind, we focus now upon the issues presented in your request.
As you are aware, Article VII, Section 21(B) (1) (a) provides, in pertinent part, the following with respect to the exemption from ad valorem taxes.
 Section 21. In addition to the homestead exemption provided for in Section 20 of this Article, the following property and no other shall be exempt from ad valorem taxation:
 * * *
 (B) (1) (a) Property owned by a nonprofit corporation or association organized and operated exclusively for religious, dedicated places of burial, charitable, health, welfare, fraternal, or educational purposes, no part of the net earnings of which inure to the benefit of any private shareholder or member thereof and which is declared to be exempt from federal or state income tax;
 * * *
 None of the property listed in Paragraph (B) shall be exempt if owned, operated, leased or used for commercial purposes unrelated to the exempt purposes of the corporation or association. (Emphasis added.)
Addressing the issue of exemption, this office has consistently held that in order to qualify for an exemption from ad valorem taxes under Article VII, Section 21(B), the property must meet all four of the basic requirements of said Article, to wit:
 1. The organization must be a nonprofit organization or association organized exclusively for one of the designated purposes.
 2. No part of the net earnings inure to the benefit of any stockholder or member thereof.
 3. Said nonprofit corporation or association must be exempt from federal or state income tax;
 4. None of the property of the nonprofit corporation or association is owned, operated, leased or used for commercial purposes unrelated to the exempt purposes of the corporation or association.
This office has consistently opined that, should the assessing authorities determine that a nonprofit corporation's or association's operations, with respect to the property in question, satisfy the aforementioned requirements, exemptions from ad valorem taxes are appropriate. Conversely, if all or a portion of the property is owned, operated, leased or used for commercial purposes unrelated to the exempt purposes, there is no, or only a partial, exemption. Attorney General Opinion No. 00-140.
The issue of whether vacant property owned by a nonprofit corporation or association is exempt from ad valorem taxation must be examined in light of Hotel Dieu et al. v. Williams et al., 403 So.2d 1255 (La.App. 1st Cir. 1981) and Board of Administrators of the Tulane Education Fundv. Louisiana Tax Commission, 701 So.2d 702 (La.App. 4th Cir. 1997), writ denied.
In the Hotel Dieu case, the issue presented was whether a nonprofit hospital corporation, generally exempt from taxation, could nevertheless be taxed on adjacent property it owned which was being leased as a medical office building, pharmacy, restaurant and parking facility. Initially, the Court observed that the answer involved construing, for the first time, the general exemption provided in Section 21(B) (1) (a) and the limitation imposed thereon by the last paragraph of Section 21(B).
The Court opined as follows:
 We conclude that the language of art. 7 § 21(B) (1) will not support any other grammatical construction than that it exempts all "[p]roperty owned by a nonprofit corporation" which corporation (not which corporation's property) is "organized and operated exclusively" for specified benevolent purposes (including health purposes). It is only the last paragraph of § 21(B) that reduces the universality of that exemption, and that last paragraph denies the exemption only to property "owned, operated, leased or used for commercial purposes unrelated to the exempt purposes of the corporation . . .". We conclude that the providing of medical office (and pharmacy and laboratory) spaces and parking space, in the immediate vicinity of a nonprofit hospital, by the hospital either directly or through a related nonprofit corporation created for that purpose, is not a "commercial purpose unrelated to the exempt purposes" of a hospital. (Emphasis added.)
In reaching its conclusion, the Court referenced excerpts from transcripts of the Constitutional Convention of 1973 (see footnote1 at pages 1257 and 1258). It opined that the context of the transcripts makes it clear that the delegates understood that the basic exemption extended to all property of the nonprofit corporation. The Court also noted that the system of property exemption under the 1974 Constitution represented a change from the 1921 Constitution's exemption of specified property. We find the following discussion to be relevant to your question:
 The 1921 language thus granted the property exemption to specified properties, with the consequence that ownership by a nonprofit corporation or association (or club) was irrelevant: a place of religious worship was exempt from taxation irrespective of its ownership. A hospital was exempt only as a "place devoted to charitable undertakings," and when a hospital was converted to a nursing home accepting only paying patients the property was subject to taxation because not "devoted to charitable undertakings." Ruston Hospital, Inc. v. Riser, La.App. 2 Cir. 1966, 191 So.2d 665. We suggest that even vacant, unused land given to an exempt hospital would have been taxable because not so "devoted."
 The 1974 Constitution's language, by way of comparison, grants the exemption to property precisely on the basis of the benevolent character of its owner: . . . The basis for exempting a hospital like Hotel Dieu today lies in its ownership by a "nonprofit corporation or association organized and operated exclusively for charitable, health or education purposes," it would be difficult to conclude that an admittedly exempt hospital which erected a nursing home on its hospital grounds would be taxable on the nursing home because that would necessitate holding that the nursing home is "unrelated" to the hospital's hospital purposes. Consider also the hypothetical case of vacant, unused land given to an exempt hospital: would not that land become exempt because owned by an exempt corporation and not used for commercial purposes? The 1974 language does not deny the exemption if the property is not used for the exempt purpose (as did the 1921 language), but only if it is used for "commercial purposes unrelated to the exempt purposes. " (Emphasis added.)
In response to defendant's argument that exemptions must be strictly construed and any plausible doubt is fatal, the Court replied:
 We find no "plausible doubt" in the construction we give to the 1974 Constitution, and we cannot find any plausible justification for a conclusion that the building in question is "owned, operated, leased or used for commercial purposes unrelated to the exempt purposes" of Hotel Dieu. The judgment of the trial court erred in its evident reliance upon the pre-1974 jurisprudence construing the 1921 Constitution.
In the Tulane case, the issue presented was whether vacant, undeveloped land bequeathed to Tulane was subject to ad valorem property taxes. Tulane inherited the property in 1985, but, as of the time the dispute arose (1996), it had taken no action to sell, develop or otherwise use it.
It is undisputed that Tulane qualifies as a nonprofit corporation as defined in Section 21(B) (1) (a). The Court cited Hotel Dieu for the proposition that Section 21(B) grants an exemption to all property owned by a qualifying nonprofit entity unless the property is used forunrelated commercial purposes. The trial court, noting that the land was not being used for any purpose, rendered judgment declaring the property exempt from all ad valorem taxes.
On appeal, the defendants, Tax Commission and the Assessor, argued that Tulane's failure to dispose of the property demonstrates a conscious decision to wait for its value to increase which equates to a "commercial purpose". They further argued that the widespread exemption of passive investment property will drastically erode the tax base beyond that which our Constitutional framers intended.
The Court, affirming the lower court, acknowledged its prior decision in Hotel Dieu:
 This constitutional provision has been construed only once before. In Hotel Dieu v. Williams, supra, this court explained that Section 21(B) first exempts all property belonging to a qualified nonprofit corporation, and then excludes from that exemption certain specified property: that which is "owned, operated, leased, or used" for an unrelated commercial purpose.
 Even though the land at issue here is vacant and undeveloped, and thus is characterized as "unused," it may nevertheless be classified as non-exempt property if it is "owned for commercial purposes unrelated to [Tulane's] exempt purposes." Thus, on the facts presented here, we agree with the contention that neither the undeveloped state of these lots nor Tulane's failure to derive current income from the property is determinative of its status as exempt or non-exempt. Nor does that status turn on whether the purpose for which Tulane owns the land is related to its exempt purpose; Tulane makes no claim that the land was either acquired or retained for any educational purpose, or that it has any plans to build an educational facility on the property. Rather, the determination of whether this property is exempt or excluded from exemption requires us to decide if Tulane owns this property for a commercial purpose.
 For the purpose of this appeal, we will accept Assessor Arnold's assertion that these two lots are being held by Tulane in the hope that they may appreciate in value. Additionally, although this record suggests that Tulane owns considerable immovable property throughout this state, no one argues that Tulane is a real estate broker or developer, or even that there is any connection between the status of these two vacant lots under Article VII, Section 21 and any other property held by Tulane. Therefore, while we will assume for purposes of discussion that this land is being held for appreciation as an "investment", we expressly reject any inference that there has been "investment activity" by Tulane.
 These lots can be excluded from the tax exemption afforded by Section 21(B) (1) (a) only if undeveloped land held as an investment constitutes ownership for a "commercial" purpose as contemplated by Section 21(B) (1) (a). We find nothing in the transcripts of the Constitutional Convention that supports the conclusion that the framers intended for the exclusion to be so broad . . .
 The fact that this property would be subject to ad valorem taxation if owned by an individual or a for-profit entity does not require us to conclude that Tulane's holding this property as an investment serves a "commercial" purpose. The disparity in treatment vis-é-vis taxation is related to the status of the holder. An individual or for-profit entity pays taxes on property it owns, not because its ownership is a commercial activity, but because he or it is not included within the class of those defined as exempt in Section 21(B) (1) (a). (Emphasis added.)
As can be gleaned from the above jurisprudence, vacant, undeveloped, unused property owned by a generally exempt nonprofit corporation or association would, likewise, be exempt. Said property can be excluded from exemption only if it is owned for a commercial purpose unrelated to the exempt purposes of the corporation or association. Under theTulane decision, holding property in the hope that it may appreciate is not an investment activity constituting an unrelated commercial purpose.
In answer to your second question, this office has consistently opined that property owned by a generally exempt nonprofit corporation or association, but leased to another nonprofit or for-profit organization is exempt, if the lease is for a purpose or purposes related to the exempt purposes of the owner-nonprofit corporation or association. It is the responsibility of the assessor to make this determination. Attorney General Opinion Nos. 00-320, 00-140, 97-422, 92-740 and 87-440.
Trusting this adequately responds to your inquiries, I am
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 By: ___________________________ ROBERT E. HARROUN, III Assistant Attorney General
RPI/REH,3/sfj
DATE RECEIVED:
DATE RELEASED: September 13, 2001